# EXHIBIT 1

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into as of July 18, 2018 between Richard Taylor ("Employee") and Western Governors University ("Employer"), who shall be referred to as the Parties, or individually as a Party.

## DEFINITIONS

1. "Employee" shall mean Richard Taylor and his heirs, assigns, and legal representatives.

2. The phrase "Employer Released Parties" shall mean Western Governors University and any and all business units, committees, groups, and their present, former or future parents, affiliates, subsidiaries, directors, officers, attorneys, employees, agents, successors, predecessors, and assigns.

3. The "Released Claims" shall mean any type or manner of suits, claims, demands, allegations, charges, damages, or causes of action whatsoever in law or in equity under federal, state, municipal or local statute, law, ordinance, regulation, constitution, or common law, whether known or unknown, which Employee has ever had or now has against the Employer Released Parties.  This includes but is not limited to any action for costs, interest or attorney's fees, which arise in whole or in part from Employee's employment relationship with Employer, from the ending of that relationship, and from any other conduct by or dealings of any kind between Employee and the Employer Released Parties, which occurred before the execution of this Agreement.  This also includes but is not limited to any and all claims, rights, demands, allegations and causes of action for alleged wrongful discharge, breach of alleged employment contract, breach of the covenant of good faith and fair dealing, termination in violation of public policy, intentional or negligent infliction of emotional distress, fraud, misrepresentation, defamation, interference with prospective economic advantage, failure to pay wages due or other monies owed, failure to pay pension benefits, conversion, breach of duty, interference with existing economic relations, punitive damages, retaliation, discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), harassment or discrimination on the basis of sex, race, color, citizenship, religion, age, national origin, or disability, or other protected classification under the federal, state, municipal or local laws of employment, including those arising under the common law, and any alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), the Fair Labor Standards Act ("FLSA"), the Family and Medical Leave Act ("FMLA"), the Occupational Safety and Health Act ("OSHA"), and any other law.

## RECITALS

A. WHEREAS, the Parties desire to settle and compromise the Released Claims and to enter into this Agreement.

## COVENANTS

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the mutual covenants set forth in this Agreement, the Parties agree as follows:

1. **Employment Separation**: Employer employed Employee until Employee's last day of work on 7/18/2018 (the "Separation Date").

2. **Consideration for Agreement**.  In consideration of Employee's signing this Agreement, and complying with the promises made herein, the Employer agrees to provide the following:

(a) After the expiration of the seven-day revocation period referred to below, Employer shall pay Employee the total gross sum of $2,828.80 less applicable payroll and tax withholdings and deductions. This amount to be paid is attributable to all of the Released Claims, including attorney's fees, costs, interest and all other expenses which may have been incurred. Employee acknowledges that the consideration listed in this paragraph constitutes consideration for this Agreement in addition to anything he is entitled to receive from Employer and assumes full and sole responsibility for any tax consequences related to this Agreement. Employee understands and agrees to indemnify and hold harmless the Employer Released Parties from any taxes, assessments, withholding obligations, penalties or interest payments that they may incur at any time by reason of demand, suit or proceeding brought against them for any taxes or assessments or withholdings arising out of the payment of the settlement amount. Employee acknowledges he has been fully compensated by the terms of this Agreement for releasing the Released Claims.

(b) If Employee is eligible and timely elects to continue Employer's group health insurance coverage for her/his self and her/his eligible dependents under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Employer will pay, on Employee 's behalf, the premiums to continue this group health insurance, including coverage for Employee 's eligible dependents; provided, however, that Employer will pay such premiums only for the coverage for which Employee and her/his eligible dependents were enrolled immediately before the Separation Date. Employer shall pay the premiums for such coverage until the earlier of (a) October 18, 2018; (b) the effective date of Employee's coverage by a health plan of a subsequent employer; or (c) the date Employee is no longer eligible for COBRA coverage. For the balance of the period that Employee is entitled to coverage under COBRA, s/he shall be entitled to maintain coverage for her/his self and her/his eligible dependents at her/his own expense.

3. **Covenant Not to Sue**. Employee shall not pursue, or authorize anyone on his behalf to pursue, the Released Claims in any way in any court. Employee represents that he has not filed and there is not pending with any governmental agency or any state or federal court, any other claims, complaints, charges, or lawsuits of any kind against the Employer Released Parties. Employee agrees that he will not make any filings with any court at any time hereafter for any matter, claim or incident, known or unknown, which occurred or arose out of occurrences on or before the date of this Agreement; provided, however, Employee understands that this Agreement does not preclude Employee from filing an administrative charge or claim with the Equal Employment Opportunity Commission or a corresponding state or local agency, but Employee agrees that if he does file such a charge or claim, Employee will not ask for or accept any money from Employer based on that charge or claim. Furthermore, this paragraph shall not limit the Parties from filing a lawsuit for the sole purpose of enforcing their rights under this Agreement. Each of the Parties shall bear their own costs and attorneys' fees in this dispute.

4. **Release and Waiver**. Employee hereby waives releases, remises and discharges each and every one of the Employer Released Parties from liability with respect to the Released Claims. Employee acknowledges that he understands he is prohibited from any further relief on the Released Claims. Employee hereby promises and covenants never to institute any suit or action at law or in equity against the Employer Released Parties regarding or relating to the Released Claims. Specifically, and without limitation, Employee understands and agrees that he is waiving and forever discharging the Employer Released Parties from any and all claims, causes of action or complaints he may have or have ever had, which have or may have arisen before the execution of this Agreement.

5. **No Assignment of Claims**. Employee represents and warrants that he is the sole owner of the Released Claims, that the Released Claims have not been assigned, transferred, or disposed of in fact, by operation of law or in any manner whatsoever, and that he has the full right and power to grant, execute and deliver the full and complete releases, undertakings, and agreements contained in this Agreement.

6. **Confidentiality**. Employee agrees that the existence and terms of this Agreement shall be and remain confidential. The Parties acknowledge that this confidentiality provision is an essential element of the consideration provided for entering into this Agreement. Therefore, Employee agrees not to discuss or describe

any information concerning the terms of this Agreement to anyone, except as required by court order or otherwise permitted in this Agreement. Employee agrees to reveal only that the matter has been resolved. This paragraph, and the covenant not to sue in this Agreement, shall not apply to any action by the Parties to enforce or challenge the enforceability of this Agreement, which are claims that can be brought by the Parties. If any provision of this paragraph is breached, the Parties shall be entitled to such legal or equitable relief as may be available by law. Nothing in this Agreement shall be construed to prohibit Employee from reporting conduct to, providing truthful information to, or participating in any investigation or proceeding conducted by, any federal, state, or local government agency.

7. **No Admission of Liability**. This Agreement does not constitute and shall not be construed as an admission by the Employer Released Parties of any breach of any alleged agreements or duties, or of any wrongdoing toward any person, including any alleged breach of contract or violation of any federal, state, or local law, regulation, or ordinance. The Employer Released Parties specifically disclaim any liability to Employee for wrongdoing of any kind.

8. **Unemployment Insurance Benefits**. Employer agrees not to object to any application Employee may make to the Utah Department of Workforce Services ("DWS") seeking unemployment benefits provided, however, that Employer reserves the right to provide accurate information in response to any inquiry from DWS concerning Employee's application for unemployment benefits and/or the cessation of his employment at Employer, even if providing such information could adversely impact Employee's eligibility for unemployment benefits.

9. **No Re-employment**: Employee agrees not to seek re-employment at Western Governors University, or any of its affiliates, in any capacity. If Employee applies for employment at Western Governors University or its affiliates, or if Western Governors University or its affiliates inadvertently hires Employee, Employee consents to Western Governors University rejecting her application or discontinuing her employment pursuant to this paragraph and covenants not sue Western Governors University for taking such action.

10. **Evidence in Subsequent Proceedings**. The Parties agree that this Agreement may be used in evidence in a subsequent proceeding in which any of the Parties alleges a breach of this Agreement.

11. **No Reliance on Outside Representations; Consultation with Counsel**. The Parties affirm they are not relying on any representations or statements made by each other which are not specifically included in this Agreement. The Parties acknowledge they have been informed in writing by this Agreement that they have the right to consult with legal counsel regarding this release and confirm that they have consulted with counsel to the extent desired concerning the meaning and consequences of this Agreement.

12. **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with relation to the subject matter of this Agreement. Any earlier negotiations or correspondence relating to the subject matter of this Agreement shall be deemed to have merged into this Agreement and to the extent inconsistent with this Agreement shall be deemed to be of no force or effect. This Agreement may not be modified, nor any provision waived unless such modification or waiver is made in writing referring to this Agreement and signed by each Party. This Agreement shall be binding upon and inure to the benefit of each of the Party's respective successors, heirs, executors, administrators and assigns, as the case may be.

13. **Signed Counterparts**. This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all of such counterparts shall constitute one and the same instrument. For purposes of the Agreement, signature by facsimile shall be deemed to be an original signature.

14. **Choice of Law**.  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Utah, and/or when applicable, of the United States. The Parties hereby irrevocably consent to the jurisdiction of the state and federal courts located in Salt Lake County, Utah for all purposes in connection with any action, suit, or proceeding that arises out of or relates to this Agreement. The prevailing Party shall be entitled to reasonable attorneys' fees and costs.

15. **Severability**.  The provisions of this Agreement are severable, and if any part of it is found to be unenforceable, the other parts and/or paragraphs shall remain fully valid and enforceable.  Should any provisions of this Agreement be determined by any court or administrative body to be invalid, the validity of the remaining provisions is not affected thereby and the invalidated part shall be deemed not a part of this Agreement.  Any court or administrative body shall construe and interpret this Agreement as enforceable to the full extent available under applicable law.  This Agreement shall survive the termination of any arrangements contained in it.

16. **Non-disclosure**.  Employee acknowledges that, by reason of his position with the Employer, he has been given access to Employer's plans, records and communications respecting the Employer's affairs which he has been told or reasonably knows to be information which is confidential, or which is the subject of reasonable efforts to maintain its confidentiality ("Confidential Information"). Employee acknowledges that, at a minimum, Employer's Confidential Information includes: a) all student information; b) all employee information; and c) all information regarding WGU's business plans, business processes, agreements, software and source code, inventions, know-how, and ideas. Employee represents that he has held all such information confidential and will continue to do so, and that, unless he first secures the Employer's written consent, Employee shall not directly or indirectly publish, market or otherwise disclose, advise, counsel or otherwise procure any other person or entity, directly or indirectly, to publish, disclose, market or use, any such secret, confidential or proprietary information or relationships of the Employer, of which Employee became aware or informed during his employment with the Employer. Such Confidential Information is and shall continue to be the exclusive proprietary property of the Employer whether or not such information was disclosed to, or developed in whole or in part by Employee.

17. **No Disparagement, No Interference with Business Relations, No Contact**.  For purposes of this provision, the term "disparage" shall mean any communication of false information or the communication of information with reckless disregard of its truth or falsity.  Employee agrees never to: a) disparage the Employer Released Parties; b) encourage, directly or indirectly, any employee, former employee, other individual or corporation or other entity to refrain from doing business with or to cease doing business with the Employer; or c) attempt to hire or assist or recommend that a new employer hire a current employee.  With respect to inquiries from prospective employers, Employer will only confirm Employee's former position and dates of service; provided, however, that nothing in this paragraph prohibits either Party from providing truthful information and testimony about the other if required by law, whether or not such information or testimony is disparaging.  Employee agrees not to enter any WGU office for any reason, even if invited by a WGU employee.  Employee also agrees not to contact, indirectly or directly, any individual who Employee knows, or reasonably should know, to be a WGU student, prospect or employee; this restriction includes, but is not limited to, contact by email, text, phone call, social media and letter.

18. Employee acknowledges and understands this is a legal contract and that he signs this Agreement knowingly, freely and voluntarily and has not been threatened, coerced or intimidated into making the same. Employee acknowledges that he has had ample and reasonable time to consider this Agreement and the effects and import of it and that Employee has been advised to seek counsel and has had such counsel and advice, legal or otherwise, as Employee desires in order to enter this Agreement.  BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES IT CONTAINS A RELEASE OF KNOWN AND UNKNOWN CLAIMS. Employee has read and fully considered this Agreement and understands and desires to enter into it.  The terms of this Agreement were derived through mutual compromise and are fully understood. Employee acknowledges that he has been offered at least twenty-one (21) days to consider the impact of this Agreement and its release of his rights to bring suit against the Employer Released Parties and after due consideration has decided to enter into this

Agreement at this time.  Employee further understands that he may revoke this Agreement for a period of up to seven (7) days following signature and execution of the same.  Any revocation within this period must be signed and submitted in writing to the undersigned representative of Employer at 4001 South 700 East, Suite 700, Salt Lake City, UT  84107 and must state, "I hereby revoke my acceptance of the Agreement."  Employee understands that if he revokes this Agreement, he is not entitled to receive the consideration provided by this Agreement.

    IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

EMPLOYEE:

_____
Signature

_____
Date


EMPLOYER:  Western Governors University


_____
By:    Bonnie Pattee
Title:  VP, People and Talent